## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>BARRY D. WOOD,<br><br>    Debtor. | Case No.  00-14460-RGM<br>(Chapter 11) |
| BARRY D. WOOD, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>CUMULUS BROADCASTING LLC,<br><br>    Defendant. | Adv. Proc. No. 06-1085 |

### MEMORANDUM OPINION

THIS CASE is before the court on the defendant's motion for judgment on the pleadings (Docket Entry 124). For the reasons stated below, the motion will be denied.

### Background

Barry Wood, the debtor, was the owner of two radio stations in Mobile, Alabama. During the course of this chapter 11 case, the radio stations were sold by an auction held by the court to Cumulus Broadcasting LLC and .com+,llc ("Dot Com"). The sale of the radio stations required the approval of the Federal Communications Commission. There was an objection to the petition to transfer the stations and the approval process dragged on much longer than initially anticipated. In accordance with the court-approved contracts, Cumulus, and later Dot Com, terminated the purchase agreements.

1

Wood re-marketed the radio stations, entered into an Asset Purchase Agreement with Styles Media Group, LLC, and brought the matter before the court for approval. There was an objection to the sale. At the hearing, Cumulus and Dot Com stated that they would pay at least $1 million more for the radio stations than Styles. The Styles sale was not approved. Wood and Cumulus entered into an agreement on July 19, 2005, which Cumulus characterizes as a non-binding letter of intent that required final definitive agreements to be negotiated, agreed upon, and executed. Wood asserts that there are binding provisions in the July 19, 2005 agreement. No final definitive agreement was reach, and Cumulus declined to go forward. Wood asserts that Cumulus' failure to go forward was a breach of the binding provisions of the July 19, 2005 agreement. Cumulus asserts that it had no contractual obligation with Wood and could withdraw at any time.[1]

**The Complaint**

Wood's complaint asserts seven causes of action against Cumulus. The first four are essentially based on the alleged binding obligations contained in the July 19, 2005 agreement. In order to recover, the parties must have been contractually bound to certain terms. The fifth count requests equitable subordination or disallowance of Cumulus' claim. The sixth count alleges fraud. The seventh count asserts that Cumulus tortiously interfered with Wood's contractual expectancy in the Styles' contract.[2]

---

[1] Dot Com followed a different path and ultimately purchased the radio station it had intended to purchase from the beginning.

[2] This motion was filed in response to Wood's First Amended Adversary Complaint filed on June 20, 2006. (Docket Entry 41.) During the pendency of the motion, Wood was granted leave to file and filed his Second Amended Adversary Complaint. (Docket Entry 139.) The Second Amended Adversary Complaint essentially added Counts VI and VII, the fraud and tortious interference counts. By agreement of the parties, the motion is deemed to have been filed in response to the Second Amended Adversary Complaint.

The July 19, 2005 agreement was never submitted to the court for approval. Cumulus argues that without regard to the non-bankruptcy effect of the July 19, 2005 agreement, the requirement that sales not in the ordinary course of a debtor's financial affairs be approved by the court means that no agreement – even one fully effective and enforceable by and against the parties under non-bankruptcy law – is enforceable unless and until approved by the bankruptcy court. 11 U.S.C. §363(b).

## Discussion

A very similar situation arose *In re Frye*, 216 B.R. 166 (Bankr.E.D.Va. 1997) (Bostetter, C.J.), in which the trustee settled a claim with Audrey L. Fain and Concrete Masonry and Asphalt. Prior to the court approving the settlement agreement, Fain and CMA sought to withdraw from the settlement agreement. The court found that the parties made an enforceable agreement to settle the claim and held that the settlement agreement was binding on the parties pending approval by the court. *Id.* at 173-74. One of the parties could not withdraw from the settlement agreement once an agreement was reached but before the court approved the settlement agreement merely because the court has not yet approved it.

The court's three-step analysis is worth examining. First, the court determined that there was a contract. It discussed the offer, the acceptance, and the consideration. It considered whether the agreement had to be in writing. *Id.* at 170-72. Second, it addressed the legal question of whether one party to an otherwise valid and enforceable agreement could unilaterally withdraw from the agreement merely because the bankruptcy court had not yet approved the agreement. It held that "[t]he agreement is . . . binding on the parties pending approval" by the court. *Id.* at 174. Finally,

3

the court reviewed the settlement agreement, applying the usual analysis, and approved it over Fain's and CMA's objection. *Id.* at 174-175. The court could have rejected the settlement agreement and would have had it not met the requisite standards. What is particularly important is that the determination of whether there was an agreement is separate and distinct from the court's approval of the agreement. The reasons for approving an agreement are different from determining whether there is an agreement. *Id.* at 174.

The analysis in *Frye* is persuasive and is equally applicable here.[3] This court, as did Chief Judge Bostetter, recognizes that courts have taken different approaches to the problem presented here, that is, the efficacy of an agreement pending bankruptcy court approval and whether a party can simply walk away from an agreement before the court approves it – even moments before approval. *See Frye*, 216 B.R. at 173 (describing the judicial split on this issue). Certain agreements are subject to bankruptcy court approval. Bankruptcy is a community, multi-party proceeding seeking to adjust the obligations of the parties fairly among all the creditors and interested parties. The purpose of court approval is to protect all of the creditors and interested parties of the estate and to assure that the proposed agreement is fair and reasonable under the circumstances. Outside bankruptcy, this determination is made by the parties to the agreement and is effective upon acceptance of an offer. The parties to a non-bankruptcy agreement are not generally charged with protecting third-party interests. Approval by the bankruptcy court is not the last step in creating a valid contract, it is a necessary step to assure that the agreement reached by the parties is fair and reasonable to the entire creditor community.

---

[3] The fact that *Frye* involved a settlement agreement and this case involves a contract is not material. Both require an existing agreement and bankruptcy court approval.

4

A contrary result undermines the bankruptcy process. Mischief can arise if a party to a contract can simply withdraw from it at any time before the court approves the agreement. The difficulty is best illustrated in the circumstances where a trustee or debtor-in-possession is actively attempting to sell estate property and has more than one interested prospective purchaser. The approval process necessarily takes time. Creditors and other parties are entitled to a reasonable time within which to review the proposed sale and make their own decision as to whether a proposed contract is in the estate's best interests. However, once the trustee or debtor-in-possession reaches an agreement, it is difficult to revive the interest of the spurned prospective purchaser. As time passes, as it must during the approval process, the ability to revive interest becomes more difficult. The disappointed prospective purchaser has moved on to other deals. If at this point the successful purchaser has the unilateral right to walk away from the deal, he has effectively eliminated his competition and may threaten to walk away unless the terms are changed more favorably to himself. In any event, the estate incurs additional costs and delays, all detrimental to the creditors.

The better resolution is to recognize that contract formation and court approval of proposed contracts are different and serve different purposes. This recognizes long-established state law with respect to contract formation and protects estates from improvidently agreed-upon contracts. There is no doubt that the court can reject a proposed agreement. But, that does not mean that the proposed agreement has no efficacy before it is either approved or rejected. The parties are committed to the agreement once they execute it. This is in accordance with ordinary contract law. The difference in bankruptcy is that the contract must ultimately be approved by the bankruptcy court because of the involvement of third parties such as creditors so that their interests are protected. It does not, however, prevent the formation of a contract. The formation of the contract is a condition precedent

5

to court approval. Once the contract is made, neither party can withdraw except in accordance with the agreement of the parties even though the contract has yet to be approved by the court.

It may be that at the hearing on court approval, a party that wishes to withdraw may have sufficient reason to show that the contract should not be approved by the bankruptcy estate. The most common reason from the debtor-in-possession's point of view or the trustee's view is a better offer. When the court is faced with two offers that are in all respects comparable except for price, the court can reject the first one if it is of a lower amount. The court will not always reject the offer which offers the lesser consideration to the estate because there are other factors to be considered such as the ability of the other party to perform on the contract, the timeliness of the performance, and other terms and conditions.

It is not necessary in this case for the debtor to have obtained court approval in order to proceed on the complaint in this adversary proceeding. It may well be necessary for the debtor, in order to recover, to show that a necessary agreement would have been approved by the court had it been presented.

For the foregoing reasons, the motion for judgment on the pleadings will be denied.[4]

Alexandria, Virginia
May 30, 2008

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

Mary Kim
Craig S. Brodsky

14328

---

[4] The parties did not address the tortious interference count. The tort alleged was interfering with the Styles contract, more particularly in improperly frustrating court approval of the Styles contract. Not having been argued, the court will not address the issue.