# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>BARRY D. WOOD,<br><br>　　　　Debtor. | Case No. 00-14460-RGM<br>(Chapter 11) |
| BARRY D. WOOD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CUMULUS BROADCASTING, LLC,<br><br>　　　　Defendant. | Adv. Proc. 06-1085 |

## MEMORANDUM OPINION

This case is before the court on Barry D. Wood's complaint against Cumulus Broadcasting, LLC alleging fraud, breach of contract, and intentional interference with a contract or business expectancy. The complaint concerns the attempted sale of one of Wood's radio stations. For the reasons stated below, the court will enter judgment for Cumulus.

## Background

Barry Wood filed his voluntary petition in bankrutcy under chapter 11 of the Bankruptcy Code on November 3, 2000. His primary assets were two radio stations, WAVH and WZEW, operating in Mobile, Alabama. On May 2, 2002, he proposed the sale of the two stations to Cumulus and .com+, llc ("Dot Com"). The sale was contingent on bankruptcy court approval and FCC approval of the assignment of the radio station licenses. WABB-FM, Inc. ("Dittman"), was

an unsuccessful competing bidder for the radio stations. After the sale was approved by this court, Dittman filed objections to the assignment with the FCC. This delayed FCC approval. The asset purchase agreement protected Mr. Wood against delays. It contained an escalation clause which increased the purchase price over time until the transaction closed. Two years afer court approval, the FCC had not approved the assignment of the licenses and, with the price continuing to increase as a result of the escalation clauses, Cumulus and Dot Com exercised their right to terminate the asset purchase agreement. Cumulus operated WAVH during this time pursuant to a local marketing agreement.

Mr. Wood then pursued negotiations for the sale of his radio stations with Styles Media Group, LLC. The negotiations were successful and the parties executed an asset purchase agreement. The sales price was $8,200,000. Mr. Wood sought court approval of the sale. The sale was opposed by William H. Phillips, Cumulus[1] and Dot Com.

Mr. Phillips was the reason Mr. Wood filed bankruptcy. Mr. Phillips had sued Mr. Wood in Alabama state court asserting that they were partners in the radio stations.[2] Mr. Wood denied this, asserting that he was the sole owner of the radio stations. Mr. Phillips had a favorable judgment which Mr. Wood was challenging on appeal. The significance of Mr. Phillips claim to the sale was that Mr. Phillips, while agreeing to sell the radio stations, ostensively had an ownership interest in the radio stations. He did not have a liquidated debt due to him. Thus, the sales price was important

---

[1] Cumulus had standing to object to the proposed sale to Styles Media because it was a creditor. Early in the case, it had purchased a claim which relieved pressure on Mr. Wood. The Styles Media proposed sale would have paid Cumulus's claim in full.

[2] Mr. Phillips was initially successful in the trial court. When a master was appointed to sell the radio stations, Mr. Wood filed bankruptcy. This long-lasting litigation may now be over. The Supreme Court of Alabama reversed the trial court judgment and after remand, Mr. Wood prevailed. Very recently, the Supreme Court of Alabama affirmed Mr. Wood's judgment.

2

to him. The higher the price, the greater his return. Cumulus was in a different position. Its only interest in a sale, as a creditor, was whether the sales price was high enough to pay its claim and whether the sale would close within a reasonable time. Of course, it was also interested in purchasing one of the radio stations so that it could enhance the cluster of radio stations it owned in the Mobile market.

At the hearing held on May 20, 2005, on the approval of the Styles Media sale, John Dickey, the Vice-President of Cumulus and an authorized representative of the company, testified that Cumulus and Dot Com were willing, collectively, to pay more for the two radio stations than Styles Media on the same terms and conditions as in the Styles Media sales agreement.[3] An attorney speaking on behalf of both Cumulus and Dot Com later stated at the hearing that the two companies were willing to outbid Styles by $500,000. The court denied Mr. Wood's motion to sell the radio stations to Styles Media in large part due to Mr. Phillips' objection and Cumulus' statements to the court.

The Styles Media sales agreement expired shortly after the hearing. Later, on July 19, 2005, following lengthy discussions, Mr. Wood on the one hand and Cumulus and Dot Com on the other signed a letter of intent. The letter of intent provided that it was subject to the execution of a final definitive asset purchase agreement, a loan agreement and a time brokerage agreement which would be substantially in the form of the Styles Media documents.[4] By January 2006, after months of

---

[3]Cumulus and Dot Com were joint purchasers of the two radio stations. They allocated the purchase price between them on a 73/27 split, Cumulus being the dominant party. Mr. Wood only wanted to sell the radio stations together. He did not want to sell one and continue to market the second.

[4]The transaction was also contingent upon FCC and court approval. In addition to the cash component of purchase price, part of the consideration in the July 19, 2005, agreement was a mutual release and settlement between Cumulus and Mr. Wood of a lawsuit pending in the United States District Court for the Southern District of Alabama.

negotiation over the terms of the final definitive agreements, the parties appeared to be close to agreement. However, on January 23, 2006, Cumulus told Mr. Wood that the market had shifted and that it was no longer willing to pay $500,000 more than Styles Media's proposed contract price. Mr. Wood was adamant about the price and the letter of intent expired without any further documents being executed.

Mr. Wood and Dot Com completed the sale of WZEW under the original terms of the Dot Com-Cumulus deal, but without Cumulus. That sale was approved by the court on April 11, 2006. WAVH, the station Cumulus was seeking to purchase, was ultimately sold to Bigler Broadcasting, LLC for $3,600,000 pursuant to an order of this court dated September 10, 2007.

## The Complaint

Mr. Wood's theory of the case was that Cumulus wrongfully interfered with the Styles Media asset purchase agreement when it objected to its approval in this court. He asserted that Cumulus did not intend to ever enter into a binding asset purchase agreement with him, but only opposed the Styles Media contract because it wanted to keep Styles Media from expanding into the Mobile market where Cumulus had a cluster of radio stations and a very significant presence. The means it used were wrongful and constituted an improper interference with his expectancy in the Styles Media asset purchase agreement pending before this court. He also asserted that the letter of intent of July 19, 2005, was a binding letter of intent that Cumulus breached by not agreeing to final definitive agreements and not closing on the sale. In addition, he asserts that Cumulus had no intent to enter into a binding agreement with him and fraudulently represented to the contrary. He requested a declaration that the July 19, 2005, letter of intent between Mr. Wood and Cumulus was

a binding letter of intent; damages for breach of contract; injunctive relief preventing Cumulus from prosecuting its suit against him; damages for fraud;[5] and damages for tortious interference with his agreement with Styles Media.[6] They resolve into three basic issues: Was the letter of intent a binding contract? Did Cumulus intend to purchase the radio station as it represented in court? Did Cumulus intentionally interfere with the Styles Media contract at the court hearing on approval of the contract?

## Discussion

### Choice of Law

The complaint alleges contract and tort claims, both of which are governed by state law. This case touches several states. Virginia is the forum for the complaint and Mr. Wood's bankruptcy case, as well as his place of residence. The radio stations are located in Mobile, Alabama. Cumulus Broadcasting, LLC is a Georgia limited liability company with its principal office located in Atlanta, Georgia.

Virginia is the forum and the court will apply Virginia's choice of law rules. *CACI Intern., Inc. v. St. Paul Fire & Marine Ins. Co.*, 556 F.3d 150, 154 (4th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). For tort claims, the place of the alleged wrong controls. *Consulting Eng'r Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 n.6 (4th Cir. 2009) (citing *Jones v. R.S. Jones & Assocs., Inc.*, 246 Va. 3 (1993)). The alleged wrong giving rise to the claim of tortious interference occurred during the May 20, 2009, sales

---

[5] Mr. Wood alleged that Cumulus despite its statements to the contrary did not intend to enter into a binding asset purchase agreement for WAVH.

[6] Mr. Wood alleged that Cumulus tortuously interfered with his contract with Styles Media by objecting to the sale and proposing to pay a higher price on the same terms and conditions as in the Styles Media proposal.

hearing before this court. Virginia tort law will therefore control. For contract claims, Virginia gives significant deference to choice of law provisions in contracts absent unusual circumstances. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999)). The complaint alleges violation of the July 19, 2005, agreement which contains a choice of law provision citing Virginia as the governing law. There do not appear to be any unusual circumstances here that would suggest that the court should not defer to the contracted choice of law provision. The court will likewise apply Virginia law to the breach of contract claim.

## Letter of Intent

The first issue is whether the July 19, 2005, letter of intent was a binding contract. The most basic test of whether a contract exists is whether there is a meeting of the minds on the essential elements. *Moorman v. Blackstock, Inc.*, 276 Va. 64, 75 (2008). While not every trivial aspect of the transaction must be agreed to by the parties before a binding contract comes into existence, the parties must agree to the material terms to be legally bound.

In the instant case, the July 19, 2005, letter of intent was not a binding contract. The agreement provided that the parties would agree upon and execute final definitive agreements. They agreed in the letter of intent, however, that the final definitive agreements would be substantially similar to the agreement between Mr. Wood and Styles Media (the "Styles Agreement"). Mr. Wood asserts that this requirement allowed a court to determine all of the material terms of the agreement between the parties. The material terms would be the same as those in the Styles Agreement. Cumulus disagreed. It argued that the Styles Agreement merely provided a framework for the

6

parties as they drafted the definitive agreements. Mr. Wood's argument is not without some merit. A strict interpretation of the term "substantially similar" could lead one to conclude that the letter of intent by referencing the Styles Agreement contained all material terms necessary to form a binding contract. It contained a price term and a description of the assets to be sold. The Styles Agreement which it referenced was a comprehensive asset purchase agreement. However, the conduct of the parties belies this interpretation.

The letter of intent was signed on July 19, 2005. The negotiations continued until January 2006 when they were terminated without reaching the required definitive agreements. Throughout this period, neither party demanded that the other simply execute a definitive agreement that followed the Styles Agreement. Both negotiated for additional terms or terms at variance with the Styles Agreement. Theoretically, there is nothing to prevent two parties who are bound to a contract from negotiating modifications to the contract or additional terms. But in this case, the evidence presented showed that the parties did not intend the provisions of the Styles Agreement to be the default terms if no other agreement could be reached but rather that the Styles Agreement only formed the outline of the issues to be addressed. The letter of intent was extended on several occasions without either party demanding that a Styles-like agreement be executed. New terms were introduced by both parties without objection by the other to the terms being raised. Adding new terms was inconsistent with using the Styles Agreement as the measure of the definitive agreements because new terms necessarily changed the Styles Agreement.

The negotiations covered a lot of territory. The parties were not able to reach agreement on a number of issues. For example, there was a fire in the vicinity of the radio transmitter that damaged it and the broadcast antenna in December 2005. Although they were repaired, the parties

could not agree on the replacement of the transmitter and antenna, and Cumulus expressed concern about the operating capacity of the radio station. Cumulus wanted a concession to purchase a new transmitter after the fire and repairs. Mr. Wood opposed this. He pointed out that the Styles Agreement was basically an "as is" contract and the old, outdated transmitter was a part of that agreement. There was disagreement about reimbursement under the time brokerage agreement of accounting fees incurred by Mr. Wood. There was also disagreement over the continued broadcasting of the program "Music and the Spoken Word," a point of insistence by Mr. Wood. Taken together, the conduct of the parties showed that there was no meeting of the minds and that the letter of intent was itself not a contract. The letter of intent expired on February 16, 2006, without the execution of definitive agreements.

While the evidence can be viewed to support Mr. Wood's argument that the July 19, 2005 letter of intent was a binding letter of intent, he bears the ultimate burden of persuasion and he has not done so, primarily because of the conduct of all of the parties from July 19, 2005, to January 2006.

## Fraud

Mr. Wood also argued that Cumulus committed fraud by appearing at the May 20, 2005, hearing on the sale of the radio stations to Styles Media and intentionally misrepresenting its intent to pay a higher price for the radio stations. He asserted that Cumulus never intended to purchase the radio station. It really just wanted to prevent Styles Media from acquiring two radio stations in a market in which Cumulus had a major stake.

Fraud must be shown by clear and convincing evidence rather than the lesser standard of

preponderance of the evidence. "[I]f a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Suprevalu, Inc. v. Johnson,* 276 Va. 356, 368 (2008) (citing *Richmond Metro Auth. v. McDevitt St. Bovis, Inc.,* 256 Va. 553, 559-60 (1998)); *Colonial Ford Truck Sales v. Schneider*, 228 Va. 671, 677 (1985).

Intent is difficult to show directly. Typically, it is shown from surrounding circumstances. The court must look to Cumulus's conduct over the course of its dealings with Mr. Wood to determine its intent at the May 20, 2005 hearing. Cumulus had a long history of interest in purchasing WAVH. Its first efforts were in 1999. It entered into a purchase agreement that was approved by the court earlier in the case, but the sale was not completed. Cumulus exercised its right to terminate the sales agreement because FCC approval was not forthcoming because of the Dittman objections.[7] Cumulus operated the radio station while FCC approval was pending. It planned various changes in format and reviewed its financial capacity. While Mr. Wood can point to some evidence that could suggest that Cumulus never intended to purchase the radio station but really only wanted to prevent Styles Media from expanding into its market, the evidence is not particularly compelling and does not rise to the clear and convincing standard. There is not enough to suggest that Cumulus's long-held interest in acquiring the radio station was abandoned before the May 20, 2005 hearing and that at the May 20, 2005 hearing it did not intend to purchase the radio station, its sole purpose being to stymie Style Media's efforts to compete with Cumulus.

---

[7]Mr. Wood was not unhappy to see Cumulus terminate the agreement. Mr. Wood and Mr. Phillips reached a settlement that split the proceeds of the sale. The sales price was the result of an auction held in court and was substantially higher than either had hoped for. The additional money satisfied both and their dispute was settled, subject to FCC approval and closing. When Cumulus terminated the agreement, the settlement between Mr. Wood and Mr. Phillips also terminated. At that time, Mr. Wood's fortunes in the Alabama litigation were improving.

**Tortious Interference with Contract Expectancy**

Mr. Wood alleges that Cumulus tortiously interfered with his contract expectancy with Styles Media by appearing at the May 20, 2005, hearing and representing that it would pay a higher price for the radio stations. Virginia law controls this issue. The Virginia Supreme Court has enunciated a five-part test. In the case of a contract expectancy,[8] the plaintiff must show: (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship or expectancy has been disrupted; and (5) improper conduct.[9] *Chaves v. Johnson*, 230 Va. 112 (1985). Mr. Wood has the burden of producing evidence of intentional interference by Cumulus with the Styles Media contract.

Cumulus appeared by counsel at the sales hearing on May 20, 2005, at which Mr. Wood sought approval of the sale of WAVH to Styles Media. It appeared in its capacity as a creditor. There is nothing improper with a creditor appearing at a sales hearing and objecting if it feels that the sale is not in its best interests. The complicating factor here is that the Styles Media sale would have paid all creditors in full.[10] Cumulus could not object to the price because all creditors were being paid in full. Instead, it objected to the terms of the sale. It argued that a Cumulus-Dot Com

---

[8]In Virginia, a contract subject to a condition precedent lacks legal effect until the occurrence of that condition. *Smith v. McGregor*, 237 Va. 66 (1989). The contract between Styles Media and Mr. Wood was subject to court approval, a condition precedent to either party's obligation to perform, and should therefore be characterized as a contract expectancy. *See Shephard v. Colton*, 237 Va. 537 (1989).

[9]The fifth element does not apply if there is in fact a contract as opposed to an expectancy of a contract. *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co., Inc.,* 254 Va. 408 (1997).

[10]Only Mr. Phillips and Mr. Wood could have benefitted from a higher price. Mr. Phillips asserted an equity interest in the radio stations. The matter was being litigated in Alabama state court. Here, Mr. Phillips favored the Cumulus offer because it was higher.

joint bid would provide fewer contingencies and greater certainty of closing.[11] The court sustained the objections.

Tortious interference with an expectancy requires an improper means or motive. Examples include fraud, misrepresentation, deceit, defamation, undue influence, misuse of confidential information, unethical conduct, and violations of standard trade or business practices. *Duggin v. Adams*, 234 Va. 221, 227-28 (1987). It was not improper for Cumulus to object to the terms of the Styles Media asset purchase agreement. It offered, in conjunction with Dot Com, what it believed to be a better offer based on more than just price. It provided fewer contingencies for closing. A deal with a greater likelihood of closing, and of closing sooner, is generally preferable, all other terms being equal.

Cumulus also raises the defense of judicial privilege. It argues that because the statement that Cumulus was willing to pay a higher price for WAVH was made during a judicial proceeding, the statement is privileged. Under Virginia law, written or spoken words in a judicial proceeding relevant to the matter at hand are absolutely privileged. *Donohoe Const. Co. v. Mount Vernon Assocs.*, 235 Va. 531 (1988). This is a matter of substantive law, not procedure. Such conduct cannot give rise to a claim of tortious interference with an expectancy. The comments made by John Dickey, representing Cumulus, and Cumulus's and Dot Com's attorneys at the Styles Media sales hearing were relevant to the proceeding. In not approving the sale to Styles Media, the court took into account John Dickey's representation that Cumulus would pay a higher price for WAVH in an all cash transaction. These statements were privileged. They do not subject Cumulus to tort

---

[11] The Styles Media asset purchase agreement did not provide for an absolute obligation to close the transaction, but rather granted Styles Media a call option (option to purchase) and Mr. Wood a put option (option to sell). The call option expired in two years. The put option expired in three years.

liability.

## **Conclusions**

For the foregoing reasons, the complaint will be dismissed.

Alexandria, Virginia
August 3, 2009

                                                  /s/ Robert G. Mayer
                                                  Robert G. Mayer
                                                  United States Bankruptcy Judge

Copy electronically to:

Craig S. Brodsky
Mary Kim

15365